UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
\_\_\_\_\_

MARCUS DONTE MIDDLEBROOK,

        Plaintiff,

v.

THOMAS PERTTU et al.,

        Defendants.
_____/

Case No. 2:23-cv-215

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Resident Unit Manager Thomas Perttu, Prison Counselor Susan Kowalski, and Unknown Parties #1 and #2, referred to as AMF Housing Unit 3 Correctional Officers First and Second Shift Staff Members.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that on April 25, 2023, he was placed in segregation at AMF. (ECF No. 1, PageID.4.) According to Plaintiff, he was placed in segregation for a false misconduct that alleged that he assaulted non-party Officer Christoff. (*Id.*, PageID.4–5.)

The next day, Plaintiff asked both the first and second shift officers if he could use the telephone. (*Id.*, PageID.5.) Plaintiff was told that he had to be at Stage 4 of the Incentive in Segregation Program (IISP) to use the phone. (*Id.*) Plaintiff references MDOC Policy Directive 04.05.120, which provides that prisoners in segregation must receive one 15-minute phone call per week unless he or she is subject to a telephone restriction or disciplinary sanctions. (*Id.*)

On April 27, 2023, Plaintiff asked officers on both shifts if he could use the telephone and was again told that he needed to be at Stage 4. (*Id.*) Plaintiff was told the same on April 28, 2023. (*Id.*)

On May 1, 2023, Plaintiff was found guilty of the assault misconduct. (*Id.*) He alleges that this guilty finding "hindered his abilit[y] . . . to stay in touch with his family members and friends." (*Id.*) On June 1, 2023, Plaintiff was off sanctions, and he was able to go to the yard and use the telephone to contact his family. (*Id.*, PageID.6.)

Plaintiff alleges that he constantly asked officers on both shifts if he could use the telephone because his calls had been decreased to one call per week. (*Id.*) According to Plaintiff, Policy Directive 04.05.120 provides that inmates on a 7-day sanction break shall receive one 15-minute phone call during that break. (*Id.*) Plaintiff argues that officers did not follow this policy and did not provide "once a week telephone call or calls to segregation prisoners." (*Id.*) Instead, they "only provided verified serious family emergency calls, attorney calls[,] and the legislative corrections ombudsman call." (*Id.*)

On June 5, 2023, Plaintiff sent a letter to the AMF Warden's office to address the issue. (*Id.*, PageID.7.) In the letter, Plaintiff mentioned that all Defendants were curtailing Plaintiff's telephone usage. (*Id.*) Plaintiff did not receive a response to his letter. (*Id.*) The next day, officers on both shifts again told Plaintiff that he needed to be on Stage 4 to use the telephone. (*Id.*)

Plaintiff wrote letters to non-parties Deputy Wardens Rebecca Horrocks and Nate Hoffman to complain about the telephone issue. (*Id.*, PageID.7–8.) He received no response from either. (*Id.*) On July 3, 2023, Plaintiff sent a kite concerning telephone usage to Defendants Perttu and Kowalski. (*Id.*) Plaintiff argued that there was "no such thing as a phone call while in this program unless [you are] a Stage 4, 5, or 6 which means if you stage without writing a ticket." (*Id.*) Plaintiff did not receive a response. (*Id.*, PageID.9.) Plaintiff also did not receive a response to his kites sent to the first and second shift officers. (*Id.*) Plaintiff filed a Step I grievance against all Defendants on July 7, 2023. (*Id.*)

On August 12, 2023, Plaintiff "was allowed to use the telephone after waiting four months to communicate with his family." (*Id.*)

On September 2, 2023, Plaintiff received a response to his grievance, which advised him that Policy Directive 04.05.120 also stated that "[p]risoners participating in a segregation incentive program shall receive telephone calls in accordance with the program's rules." (*Id.*)

Plaintiff alleges that he was able to use the telephone on September 21 and 30, 2023. (*Id.*, PageID.10.) Plaintiff argues, however, that he did not receive his 15-minute calls. (*Id.*, PageID.12.) Instead, Plaintiff used his free 10-minute phone calls that Global Tel Link (GTL) had been providing every Monday to MDOC inmates. (*Id.*)

Plaintiff contends that the "severe restrictions" on telephone usage have "placed a substantial burden on Plaintiff's ability to maintain relationships with his family and friends." (*Id.*,

5

PageID.13.) He argues that Defendants "know or should know[] that telephone calls are extremely important to rehabilitation, morals, and the maintenance of family integrity." (*Id.*, PageID.14.) Plaintiff avers that the telephone restrictions have "caused him emotional and psychological injury." (*Id.*) He states that he does not receive mail or visits from his family and friends. (*Id.*, PageID.14–15). Plaintiff experiences "symptoms of anxiety and depression, includ[ing] increased heart rate, obsessive thoughts, impatience, and feeling[s] of isolation, pessimism, and being trapped." (*Id.*, PageID.16.)

Based on the foregoing, Plaintiff asserts violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. The Court also construes Plaintiff's complaint to assert violations of MDOC Policy Directive 04.05.120. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.22.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Claims

#### 1. Right to Speech and Association

Plaintiff alleges that Defendants have curtailed his "rights to free speech and association," in violation of the First Amendment, by limiting his ability to use the phone. (ECF No. 1, PageID.19.)

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights

are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (en banc).

Prisoners have a right to "reasonable" access to the telephone. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). However, the restrictions about which Plaintiff complains did not completely deprive him of access to the outside world. *Cf. Almahdi v. Ashcroft*, 310 F. App'x 519 (3d Cir. 2009) (holding that restriction of prisoner's telephone access to one phone call per month did not violate the First Amendment); *Miles v. Scanlon*, No. 1:21-cv-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (noting that inmates "do not have a constitutional right to a particular form of communication"); *Dallas v. Chippewa Corr. Facility*, No. 2:17-cv-198, 2018 WL 3829203, at *6 (W.D. Mich. Aug. 13, 2018) (dismissing prisoner's First Amendment claim premised upon a "refusal to allow him to use a phone every thirty days while on a break from sanctions"). Plaintiff's complaint fails to plausibly allege a violation of his First Amendment right to free speech and association. Although Plaintiff suggests that he does not receive mail and visits from his family and friends (ECF No. 1, PageID.14–15), nowhere in his complaint does Plaintiff allege that the prison prevents Plaintiff's family and friends from using those forms of communication or that he himself is unable to initiate communication with these individuals via mail. Instead, Plaintiff's allegations suggest that those other methods of communication (i.e., mail or visits) are not his or his family's preferred methods of communication, not that he or his family are prevented from using these forms of communication by the prison. Plaintiff's complaint, as pleaded, simply does not permit an inference that Plaintiff has been completely cut off from communication with the outside world. Rather, Plaintiff takes issue with limitations placed upon use of the telephones in the segregation unit. Plaintiff's First Amendment free speech/association claims will, therefore, be dismissed.

### 2. Retaliation

Plaintiff also suggests that Defendants have retaliated against him for his protected conduct, in violation of the First Amendment, by limiting his ability to use the phone. (ECF No. 1, PageID.21.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (holding that "bare allegations of malice on the defendants' parts are not enough to establish

9

retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

The filing of nonfrivolous grievances and kites is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, a loss of privileges, which includes loss of the right to use the phone, amounts to adverse action. *See Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill*, 630 F.3d at 474). Plaintiff, however, merely alleges the ultimate fact of retaliation in this action. Plaintiff alleges no *facts* from which the Court could infer that Defendants denied Plaintiff access to the phone because of his grievances and kites. Rather, Plaintiff's own allegations suggest that he was denied access to the phone because he was not yet at Stage 4 in the IISP. Plaintiff's conclusory and speculative allegations clearly fail to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's retaliation claims will, therefore, be dismissed.

### B.     Fifth Amendment Claims

Plaintiff contends that Defendants have violated his rights under the Fifth Amendment by restricting his access to the telephone. Plaintiff references due process violations, as well as violations of "freedom of speech and equal protection." (ECF No. 1, PageID.21.) The Fifth Amendment, however, applies only to claims against federal employees, and Plaintiff sues employees of the MDOC. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and such claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### C. Eighth Amendment Claims

Plaintiff next suggests that Defendants' refusal to allow him to use the telephone violates his Eighth Amendment rights. (ECF No. 1, PageID.21–22.) According to Plaintiff, he is "suffering psychological injury, emotional distress, and destruction of his familial relationships." (*Id.*, PageID.22.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference

11

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff simply does not allege facts rising to the level of an Eighth Amendment violation. Nothing in his complaint leads the Court to conclude that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Limitations on phone privileges, while unpleasant, do not amount to a denial of basic human needs. *See Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *5 (W.D. Mich. Mar. 3, 2021) (collecting cases). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Hardin-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Plaintiff's allegations fall well short of meeting the objective prong of the Eighth Amendment standard. His Eighth Amendment claims against Defendants will, therefore, be dismissed.

### D. Fourteenth Amendment Claims

#### 1. Procedural Due Process

Plaintiff also contends that Defendants violated his Fourteenth Amendment due process rights by denying him use of the phone. Specifically, Plaintiff alleges that Defendants have "not presented Plaintiff with a notice, a hearing, [and] the ability to present evidence to contest that was needed." (ECF No. 1, PageID.18.)

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted), *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the Court, a prisoner is entitled to the protections of due process only when the change in conditions "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

13

Plaintiff vaguely suggests that Defendants' actions violate MDOC policy regarding phone access in segregation. Courts, however, routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992). Moreover, Plaintiff's claim that his Fourteenth Amendment rights were violated because he could not access the phones as freely as he would like lacks merit. *See, e.g.*, *Jamerson v. Taskila*, No. 2:22-cv-98, 2022 WL 1769085, at *11 (W.D. Mich. June 1, 2022); *Smith v. Schiebner*, No. 1:21-cv-878, 2022 WL 214020, at *6 (W.D. Mich. Jan. 25, 2022); *Dallas*, 2018 WL 3829203, at *6; *Anderson v. Barrows*, No. 2:19-cv-3631, 2019 WL 4451536, at *2 (S.D. Ohio Sept. 17, 2019) (dismissing plaintiff's due process claim premised upon "his inability to access a phone to call his family"); *Allen v. Alexsander*, No. 2:16-cv-245, 2017 WL 2952929, at *5 (W.D. Mich. July 11, 2017) (90-day phone restriction did not implicate a liberty interest); *Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (6-month restriction on telephone privileges does not amount to an atypical or significant hardship that would trigger due process protections); *Adorno v. Semple*, No. 3:16-cv-325, 2016 WL 7469709, at *7 (D. Conn. Dec. 28, 2016) (concluding that "any Fourteenth Amendment claim based on an inability to make a telephone call is without merit"). Plaintiff's inability to use the phones as often as he would like simply does not reach the level of an atypical and significant hardship sufficient to trigger his due process rights. His procedural due process claims will, therefore, be dismissed.

### 2. Substantive Due Process

Plaintiff vaguely references violations of his Fourteenth Amendment substantive due process rights as well. (ECF No. 1, PageID.2.) "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the

14

concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here, Plaintiff's complaint fails to allege facts suggesting that any of the named Defendants engaged in conduct that shocks the conscience.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments, as well as the Fourteenth Amendment's protections regarding procedural due process and equal protection, apply to Plaintiff's claims for relief. Consequently, Plaintiff's substantive due process claims will be dismissed.

### 3. Equal Protection

Plaintiff also vaguely suggests that Defendants have violated his Fourteenth Amendment equal protection rights by limiting his access to the telephone. According to Plaintiff, he was able to use the phone freely in general population but is unable to do so while in segregation. (ECF No. 1, PageID.15.)

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than

others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006))). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's allegations neither implicate a fundamental right nor state that he is a member of a suspect class. Plaintiff instead appears to contend that he has been treated differently from others in general population as well as those in the IISP program. Prisoners within segregation, however, are not similarly situated to those in general population. *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (affirming dismissal of prisoner's equal protection claim because administrative segregation inmates are not similarly situated to general population inmates for

purposes of an equal protection analysis). For that reason alone, any equal protection claim premised upon Plaintiff's treatment as compared to inmates in general population is subject to dismissal.

Plaintiff also appears to suggest that he has been treated differently from others in the IISP program because Defendants have told Plaintiff that he needs to be at Stage 4 to use the telephone. Plaintiff asserts that only those who are at Stages 4, 5, and 6 are allowed to use the phone. To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

Plaintiff, however, fails to allege any facts to demonstrate that other inmates in the IISP were similar in all relevant aspects. Plaintiff's own allegations suggest that only inmates at Stages 4, 5, and 6 were permitted to use the phone. Plaintiff does not provide any facts regarding what stage of the IISP he is in. Presumably, however, Plaintiff is not in Stages 4, 5, or 6 given his allegations. Plaintiff's complaint is entirely devoid of facts suggesting that other inmates in the

17

IISP that were not at Stages 4, 5, and 6 were permitted to use the phones. Plaintiff's conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Because Plaintiff has not alleged facts that support an inference that Defendants treated him disparately as compared to others similarly situated, he cannot maintain an equal protection claim premised upon Defendants' denial of phone privileges. *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379. Accordingly, the Court will dismiss Plaintiff's equal protection claims.

### E. Violations of MDOC Policy Directive 04.05.120

The Court has construed Plaintiff's complaint to assert violations of MDOC Policy Directive 04.05.120. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause. As noted *supra*, however, Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney*, 501 F.3d at 581 n.2; *Brody*, 250 F.3d at 437; *Smith*, 954 F.2d at 347–48.

To the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction over state law claims for violations of MDOC policy, this Court declines to do so. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain

supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, because the Court has dismissed all of Plaintiff's federal claims, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's claims alleging violations of MDOC Policy Directive 04.05.120 will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims alleging violations of MDOC Policy Directive 04.05.120 will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not

be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  November 28, 2023                                       /s/ *Maarten Vermaat*
                                                                 Maarten Vermaat
                                                                 United States Magistrate Judge